**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Salvador MENDEZ–ZAMORA and
Heraclio Gaona–Sepulveda,
Defendants–Appellants.**

**Nos. 01–3211, 01–3215.**

United States Court of Appeals,
Tenth Circuit.

July 24, 2002.

Benjamin N. Casad, Kansas City, KS, for Defendant–Appellant, Heraclio Gaona–Sepulveda.

Scott C. Rask, Assistant United States Attorney, Kansas City, Kansas (James E. Flory, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney, Topeka, KS, on the brief), for Plaintiff–Appellee in Case No. 01–3215.

Patrick E. D'Arcy, Kansas City, KS, on the briefs, for Defendant–Appellant, Salvador Mendez–Zamora.

James E. Flory, United States Attorney, and Nancy Landis Caplinger, Assistant

United States Attorney, Topeka, KS, on the brief for Plaintiff–Appellee in Case No. 01–3211.

Before HARTZ, ALDISERT,* and HOLLOWAY, Circuit Judges.

HARTZ, Circuit Judge.

After examining the briefs and appellate record, we have determined to honor the parties' request for a decision on the briefs without oral argument in Appeal No. 01–3211, *United States v. Mendez–Zamora.* *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. We heard oral argument in Appeal No. 01–3215, *United States v. Gaona–Sepulveda.* Because the two appeals share some issues, we dispose of them together in this opinion.

At a joint trial the jury found Defendants Heraclio Gaona–Sepulveda and Salvador Mendez–Zamora guilty of conspiracy to distribute and to possess with intent to distribute at least one kilogram of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mendez–Zamora was also convicted of three substantive offenses: (1) Count 5—distribution of and possession with intent to distribute 50 grams or more of methamphetamine, as a principal or an aider and abettor, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (2) Count 7—possession with intent to distribute 500 grams or more of methamphetamine, as a principal or an aider and abettor, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) Count 8—using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b). Gaona–Sepulveda was also named in Counts 5 and 7, but he was acquitted on both charges.

In computing Mendez–Zamora's offense level under the United States Sentencing Guidelines (U.S.S.G.), the district court set the base offense level at 38, increased the level by 2 for possession of a firearm, increased it by 3 more for being a manager or supervisor, and added an additional 2 for obstruction of justice, resulting in an offense level of 45. The court sentenced him to life in prison.

As for Gaona–Sepulveda, the district court first set the base offense level at 38 because the quantity of methamphetamine distributed or possessed with intent to distribute as part of the conspiracy exceeded 15 kilograms. The court then increased the level by 2 for possession of a firearm, increased it by an additional 2 for obstruction of justice, and decreased it by 2 because of his minor role in the conspiracy, leading to a guideline offense level of 40. In accordance with U.S.S.G. § 2D1.1(b)(6), the court then departed downward 2 levels on the ground that the base offense level of 38 overrepresented Gaona–Sepulveda's culpability, in that he was personally involved with only 2.457 kilograms of methamphetamine. With the downward departure, the offense level was 38 and the guideline sentencing range was 235–293 months. The court imposed a sentence of 264 months' imprisonment.

On appeal Defendants raise several issues, some jointly. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

I. *Joint Issues*

A. *Testimony Regarding Role in Conspiracy*

■ Both Defendants complain of testimony by Sergeant Ray Bailiff regarding

---

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

their roles in the drug conspiracy. Bailiff testified that Mendez–Zamora "was a broker ... an individual that fell in that category of getting drugs from the source to the distributors.... And occasionally he was a distributor." He testified that Gaona–Sepulveda "assisted the brokers—the broker. And he was—he assisted in the brokerage of the methamphetamine to the distributors."

The basis of Defendants' challenge to the testimony is not entirely clear. Mendez–Zamora's brief, which is adopted by Gaona–Sepulveda on this issue, states that the testimony improperly attempted to take from the jury the ultimate issue of Defendants' guilt. The brief's reference to *United States v. Morales,* 108 F.3d 1031 (9th Cir.1997), suggests that Defendants rely on Federal Rule of Evidence 704(b), which provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

We have previously held, however, that this rule does not preclude expert testimony regarding the roles played by participants in a conspiracy. *See United States v. Richard,* 969 F.2d 849, 854–55 (10th Cir.1992).

Because such evidence is not excluded by Rule 704(b), we apply the general proposition set forth in Rule 704(a) that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). To the extent that

Defendants argue that the testimony of police officers—which they contend may carry particular weight with a jury—is subject to a special rule, we reject the argument as contrary to the language of Rule 704 and inconsistent with our precedents, *see Richard,* 969 F.2d at 854–55.

### B. *Intent Instruction*

Mendez–Zamora, whose position on the issue was adopted by Gaona–Sepulveda, asserts that Instruction 24A[1] impermissibly shifted the burden of proof to the defendant and violated the Fifth Amendment prohibition of compelled self-incrimination. Instruction 24A stated:

> The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or *omitted* by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

> You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during the trial.

(emphasis added).

Mendez–Zamora contends that "[t]he jury could use this instruction to find guilt simply because there was not abundant evidence of denials of guilt from [him] after his arrest" and that "the in-

---

**1.** Mendez–Zamora's brief in chief incorrectly refers to Instruction 25.

struction wrongly imposed a duty to act upon [him]." We disagree. The challenged language refers to the evidence that a jury may consider in assessing intent; it does not alter the elements of the offense that the government must prove or suggest that the defendant has an obligation to assert his innocence.

In *United States v. Simpson* the defendant challenged the following sentence from the instructions: "It is ordinarily reasonable to determine that a person intends the natural and probable consequence of acts knowingly done or knowingly omitted." 950 F.2d 1519, 1524 (10th Cir.1991). We rejected the argument that the language in that specific sentence improperly shifted the burden of proof from the government to the defendant. *Id.* To suggest that a person's state of mind can be inferred from his omissions (as well as his acts) is merely to utter common sense. We fail to see how the instruction reduces the government's burden to prove all elements of the offense beyond a reasonable doubt or how it in any way compels a defendant to incriminate himself.

## II. *Mendez–Zamora Issues*

### A. *Sufficiency of the Evidence*

■ Mendez–Zamora contends that the evidence at trial was insufficient to support his conviction because (1) the testimony of key witnesses was not credible and (2) there was no physical evidence to connect him to the crimes. "The sufficiency of the evidence to support a criminal conviction is a question of law to be reviewed *de novo.* In doing so, however, we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury verdicts." *United States v. Higgins,* 282 F.3d 1261, 1274 (10th Cir. 2002).

■ We will not hold that testimony is, as a matter of law, incredible unless it is " 'unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.' " *Tapia v. Tansy,* 926 F.2d 1554, 1562 (10th Cir.1991) (quoting *United States v. Garner,* 581 F.2d 481, 485 (5th Cir.1978)). Otherwise, "our function as a court of review prevents us from re-weighing the testimony and coming to a conclusion at odds with the one reached by the jurors." *Higgins,* 282 F.3d at 1275. Despite the criminal involvement of key government witnesses and the apparent inconsistencies in their accounts, their testimony can sustain the verdict. *See id.* Similarly, the absence of physical evidence is not fatal to Mendez–Zamora's conviction. *See United States v. Smith,* 131 F.3d 1392, 1399 (10th Cir.1997) (verdict can be based solely on testimony of allegedly unreliable witnesses that was not corroborated by physical evidence). We reject this challenge to the verdict.

### B. *Discretion to Depart from Guidelines*

The district court rejected Mendez–Zamora's request for a downward departure from the offense level computed in accordance with the Sentencing Guidelines. He contends that the court improperly refused to recognize that it had discretion to depart from the Guidelines in his case. He relies on the court's statement that "based on the reasons given, the court does not have the authority to depart and, therefore, the court finds that the defendant's motion for downward departure is denied."

■ We have "jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines [only] in the very rare circumstance that the district court states that it does not have any authority

to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." *United States v. Castillo*, 140 F.3d 874, 887 (10th Cir.1998). In other words, we possess no jurisdiction "when a sentencing court concludes *under the defendant's particular circumstances* that it does not have the authority to depart." *Id.* (emphasis in original).

At sentencing, arguments were presented by both Mendez–Zamora and the government regarding the downward departure. The district court discussed each of Mendez–Zamora's eight reasons for departure and rejected them all. The court concluded that this specific case was not "outside the heartland" of typical cases, *see Koon v. United States*, 518 U.S. 81, 92–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (discussing the concept of "heartland" cases), and therefore the Sentencing Guidelines did not grant authority to depart from the sentencing range. Because the court's decision resulted from consideration of Mendez–Zamora's particular circumstances, we have no jurisdiction to review the decision. *See United States v. Browning*, 252 F.3d 1153, 1160–61 (10th Cir.2001).

### III. *Gaona–Sepulveda Issues*

#### A. *Special Interrogatories and Double Jeopardy*

Having been convicted of conspiracy but acquitted on all substantive counts, Gaona–Sepulveda claims that his rights under the Double Jeopardy Clause, including the doctrine of collateral estoppel, were violated by relitigating at sentencing those facts that were found in his favor at trial. Associated with this claim is his complaint that the district court rejected special jury instructions that he requested. The requested instructions set forth five occasions on which methamphetamine was seized and for each seizure asked whether he had conspired to distribute the seized drugs. He apparently contends that failure to give the jury the special instructions prejudiced his ability to challenge facts used in his sentencing.

▮▮▮ Gaona–Sepulveda's argument fails, however, because an offense need not be ignored for sentencing purposes just because the jury found the defendant not guilty of the offense. The Double Jeopardy Clause is not violated when the sentencing court considers conduct for which the defendant was acquitted. *See United States v. Watts*, 519 U.S. 148, 154–55, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam). This result follows from the difference between the standard of proof at trial and the standard of proof at sentencing. *Id.* at 155, 117 S.Ct. 633. " '[A]cquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt.' " *Id.* (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)). The existence of reasonable doubt as to guilt does not preclude the sentencing court from finding by a preponderance of the evidence that the conduct occurred. *Id.* at 156–57, 117 S.Ct. 633. We hold that Gaona–Sepulveda has not been subjected to double jeopardy and the district court did not err in rejecting special instructions. *Cf. United States v. Stanberry*, 963 F.2d 1323, 1326 (10th Cir. 1992) (holding that due process does not impose a "duty upon the trial court to submit a special interrogatory to the jury concerning a disputed fact issue which bears only upon a sentencing factor").

#### B. *Use of Co–Conspirator Conduct in Sentencing*

The base offense level for a drug conspiracy depends upon the quantity of

drugs involved. U.S.S.G. § 2D1.1(a)(3). Gaona–Sepulveda argues that the district court erred at sentencing by considering drugs distributed by co-conspirators on several occasions, even though he was not convicted (or was even acquitted) of the substantive offense of distributing the drugs on those occasions. We reject the argument.

 The Sentencing Guidelines require that all relevant conduct be considered at sentencing. U.S.S.G. § 1B1.3. Relevant conduct includes reasonably foreseeable acts of co-conspirators in furtherance of their conspiracy. U.S.S.G. § 1B1.3(a)(1)(B); *see United States v. Suitor*, 253 F.3d 1206, 1209 (10th Cir. 2001). In particular, "[d]rug quantities associated with illegal conduct for which a defendant was not convicted are to be accounted for in sentencing, if they are part of the same conduct for which the defendant was convicted." *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir.1993).

 Defendant's reliance on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is misplaced. In certain circumstances *Apprendi* requires a factor that can increase the defendant's sentence to be found by the jury beyond a reasonable doubt. *Id.* "*Apprendi* [, however,] does not apply to sentencing factors that increase a defendant's guideline range but do not increase the [sentence beyond the] statutory maximum." *United States v. Sullivan*, 255 F.3d 1256, 1265 (10th Cir.2001). The statutory maximum for Gaona–Sepulveda's offense is life imprisonment. *See* 21 U.S.C. § 841(b)(1). Because his sentence was 264 months, *Apprendi* does not apply.

In any event, we note that Gaona–Sepulveda obtained much of the relief he seeks when the district court departed downward two levels in recognition of his limited role in some of the crimes that the court had to consider in setting the offense level.

### C. *Standard of Proof for Sentencing*

 Gaona–Sepulveda contends that when relevant conduct results in a substantial increase in sentence, the conduct should be proved by more than just the preponderance of the evidence. He alleges that limiting the drug quantities to the count of conviction in his case would result in an adjusted offense level of 34 or 36, instead of the 40 that the court assigned. This difference, he contends, is large enough to require proof by clear and convincing evidence.

We rejected this argument in *Washington*, 11 F.3d at 1516. In that case, even though the drug quantities beyond the three counts of conviction increased the base offense level from 32 to 40, ultimately leading to an offense level of 44 and three consecutive 40–year sentences, we held that the preponderance of evidence standard was proper. *Id.* at 1515–16. Here, the increases in offense level and length of sentence for Gaona–Sepulveda were smaller than the increases for the defendant in *Washington*, both in absolute terms (the increase in offense level and the increase in sentencing guideline range) and as a percentage of the unenhanced figures. Because *Washington* controls, the district court did not err by using the preponderance standard at sentencing.

### IV. *Conclusion*

Defendants' convictions and sentences are AFFIRMED.