F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**APR 29 2004**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DONTE ORMOND WARD, a/k/a
Antwan Damon Wilson, a/k/a Monster,

     Defendant-Appellant.

--------------------

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JASON TODD DAVIS,

     Defendant-Appellant.

--------------------

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MICHAEL GAITHER, also known as
Mike G.,

     Defendant-Appellant.

No. 03-6005

No. 03-6123

No. 03-6145

(D.C. No. CR-01-181-M)
(W.D. Oklahoma)

**ORDER AND JUDGMENT[*]**

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the

Before **EBEL**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

After a five-week trial, a jury found defendants Donte Ormond Ward, Jason Todd Davis, and Michael Gaither guilty of numerous drug-related crimes. The district court sentenced each defendant to multiple concurrent terms of life imprisonment and lesser terms of imprisonment. Defendants filed separate appeals alleging various errors by the district court, which we address in this consolidated order and judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

The indictment named 12 defendants. Only Ward, Davis, and Gaither went to trial. Count 1 of the indictment sets forth the overarching conspiracy charge against them. It alleges that defendants conspired to possess with intent to distribute and to distribute a mixture or substance containing phencyclidine (PCP), in violation of 21 U.S.C. §§ 841(a)(1), 846. The conspiracy allegedly began on or about January 1998, continued until about August 3, 2001, and involved one kilogram or more of PCP.[2] Ward was convicted on 6 counts; Davis was convicted on 25 counts; and Gaither was convicted

citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[2] For some purposes, the distinction between pure PCP and a mixture and substance containing PCP is significant. In this opinion, however, unless otherwise stated, we refer to PCP as a mixture and substance containing PCP.

on 38 counts.[3]  All of the defendants were convicted on Count 1, the conspiracy charge.

Evidence presented by the government at trial established unequivocally that defendants participated in a conspiracy to distribute PCP in Oklahoma City.  Former members of the conspiracy testified at trial that defendants pooled their money to purchase PCP in California.  Because defendants did not use PCP, "testers" were employed to ensure the quality of the PCP purchased, and some of the testers testified at trial.  Other members of the conspiracy, frequently females, served as couriers, carrying the PCP to Oklahoma City by bus or plane.  Several couriers testified at trial that they acted at the behest of defendants, that their travel arrangements were made for them, and that they were paid for their service either in cash or PCP.  Testimony and corroborating

---

[3] Count 3 against Davis and Gaither was dismissed prior to trial.  The jury acquitted Davis and Gaither on Count 62.  The jury also acquitted Gaither on Count 25.  Ward was convicted of one count of conspiracy to possess with intent to distribute and distribution of PCP, in violation of 21 U.S.C. § 846, and five counts of possession with intent to distribute PCP, in violation of 21 U.S.C. § 841(a)(1).  Davis was convicted of one count of conspiracy to possess with intent to distribute and distribution of PCP, in violation of 21 U.S.C. § 846, three counts of distribution of PCP, in violation of 21 U.S.C. § 841(a)(1), five counts of possession with intent to distribute PCP, in violation of 21 U.S.C. 841(a)(1), seven counts of transportation in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3), and nine counts of use of a communication facility to facilitate the distribution of PCP, in violation of 21 U.S.C. § 843(b).  Gaither was convicted of one count of conspiracy to possess with intent to distribute and distribution of PCP, in violation of 21 U.S.C. § 846, five counts of distribution of PCP, in violation of 21 U.S.C. § 841(a)(1), ten counts of possession with intent to distribute PCP, in violation of 21 U.S.C. 841(a)(1), eight counts of transportation in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3), twelve counts of use of a communication facility to facilitate the distribution of PCP, in violation of 21 U.S.C. § 843(b), and two counts of attempt to possess with intent to distribute PCP, in violation of 21 U.S.C. § 846.

3

documentary evidence established that on some occasions members of the conspiracy sent PCP from California to Oklahoma City via the Postal Service or Federal Express. There was also evidence that on some occasions money to be used for purchasing PCP was wired via Western Union from Oklahoma City to members of the conspiracy in California.

Other members of the conspiracy, who were street level dealers and users, testified regarding activities in Oklahoma City. This testimony established that after PCP arrived in Oklahoma City, it was broken into smaller quantities and sold at a profit. PCP purchased in California for less than $100 per ounce was generally sold in Oklahoma City for more than $400 per ounce. Members of the conspiracy sold PCP from residences, hotel rooms, and other locations. Firearms frequently were kept at those locations.

Prior to trial, the district court denied Gaither's motion to exclude certain fingerprint evidence. At the close of the government's case, Ward and Gaither moved, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal as to Count 5. Ward moved for a judgment of acquittal as to Count 9. Both counts charged possession with intent to distribute PCP. The district court denied both motions. Davis and Gaither objected to submission of the indictment to the jury and to the format of the verdict forms.[4] The district court overruled those objections.

---

[4] We note this is not the same <u>Apprendi</u> issue we have raised sua sponte. Defendants objected "to any amounts of drugs that are listed in the overt acts in the instructions and [asked] the Court . . . to conform the amounts of PCP to the evidence that

At separate sentencing hearings, defendants made numerous objections to the drug quantity findings of their respective presentence reports (PSRs). Over those objections, the district court essentially adopted the drug quantity findings of the PSRs. The court made the following upward adjustments to the base offense level of each defendant: (1) a four-point enhancement for leading and organizing the conspiracy, pursuant to U.S.S.G. § 3B1.1(a); (2) a two-point enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1; and (3) a two-point enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1). In addition, the court adjusted Gaither's offense level upward two points for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2. As a result, Ward's adjusted offense level was 44, Davis' was 46, and Gaither's was 48.

Under the Guidelines, any adjusted offense level of 43 or greater dictates a sentence of life imprisonment. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), however, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Therefore, although the Guidelines required a life sentence, the district court was constrained by the statutory

_____

ha[d] been introduced at trial." Tr. Vol. XVII at 122. Defense counsel stated, "I think it is important that the Government conform these numbers to the testimony in this case simply because the jurors, in the verdict forms, will be asked to find specific amounts for penalty ranges." Id. at 123. Counsel further stated that defendants' "objection under Apprendi [wa]s that all counts, all evidence, all instructions, all verdict forms should be in such a way that the jury can find the actual [drug quantity] amount." Id. at 124-25.

maximum sentence applicable to each count. Accordingly, the court sentenced defendants to what it believed was the maximum statutory sentence on each count of conviction.

II.

**Fingerprint evidence**

Gaither argues that fingerprint evidence admitted at trial was not sufficiently reliable to satisfy the standard established by Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702.

In July 2001, Oklahoma City police learned, via a wiretap, that Davis and Gaither were planning to ship a parcel containing PCP from California to Oklahoma City. The government recorded conversations in which Davis and Gaither discussed a particular address and a tracking number, and police intercepted a package bearing the address and tracking number discussed in those conversations. Several sets of fingerprints were "lifted" from the package and from packing materials inside the package. A jar containing approximately 16 ounces of PCP was found inside the package. In a subsequent recorded call to the Postal Service's "1-800" number, Gaither attempted to locate the package. At trial, Yvonne Hill, a fingerprint examiner with the Oklahoma City Police Department, identified several of the lifted fingerprints as Gaither's and one fingerprint as Davis'.

In United States v. Turner, 285 F.3d 909, 913-14 (10th Cir. 2002), the defendant

6

made the same argument Gaither makes here. We declined to reach the Daubert issue, concluding any error in admitting expert fingerprint analysis was harmless due to other overwhelming evidence against the defendant.[5] Similarly, in this case, any error in admitting Hill's testimony was harmless. Irrespective of the fingerprint evidence, there was overwhelming evidence connecting Gaither to the package in question. Moreover, the jury acquitted Davis and Gaither on the count that charged conduct most closely related to the fingerprint evidence (Count 62, which alleged that David and Gaither, on or about July 7, 2001, used the Postal Service to distribute approximately 16 ounces of a mixture and substance containing PCP).

**Sufficiency of evidence to support verdicts on Counts 5 and 9**

Ward and Gaither argue there was insufficient evidence to support the jury's verdicts against them on Count 5. Ward also argued there was insufficient evidence to support the jury's verdict against him on Count 9.

"In reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether, taking the evidence--both direct

---

[5] Circuits that have addressed the admissibility of fingerprint evidence have determined it is scientifically reliable. See United States v. Crisp, 324 F.3d 261 (4th Cir. 2003) (concluding fingerprint identification satisfied Daubert); United States v. Hernandez, 299 F.3d 984 (8th Cir. 2002) (same); United States v. Havvard, 260 F.3d 597, 601 (7th Cir. 2001) (same). In Crisp, the court stated that "[w]hile the principles underlying fingerprint identification have not attained the status of scientific law, they nonetheless bear the imprimatur of a strong general acceptance, not only in the expert community, but in the courts as well." 324 F.3d at 268.

and circumstantial, together with reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999) (internal quotation omitted). This court does not "second-guess the jury's credibility determinations or conclusions concerning the weight of the evidence presented." Id.

In Count 5, Ward, Davis, and Gaither were charged with possessing with intent to distribute approximately three gallons (roughly 384 ounces or 10.88 kilograms) of PCP in Oklahoma City, Oklahoma, in or about late 1999, in violation of 21 U.S.C. § 841(a)(1). To convict on Count 5, the jury was required to find that (1) in or about late 1999 defendants knowingly possessed PCP, and (2) they possessed the PCP with the specific intent to distribute it. Apprendi requires proof of drug quantity as an essential element of the crime only for purposes of determining the applicable statutory maximum sentence. As we explained in United States v. Jones, 235 F.3d 1231, 1236 (10th Cir. 2000), "the quantity of drugs involved in a violation of § 841 is an essential element of the offense if that fact exposes the defendant to a heightened maximum sentence under § 841(b)(1)(A) or (B)."

There is no question the government presented sufficient evidence at trial to allow a reasonable jury to conclude that Ward and Gaither, in or about late 1999, knowingly possessed some quantity of a mixture and substance containing PCP and intended to

8

distribute it. At trial, Donald Hannah testified that he purchased PCP on numerous occasions in 1999 from a duplex on 39th Street in Oklahoma City. According to Hannah, Ward frequently was present at the duplex and Hannah made between 10 and 15 purchases of PCP from Ward. Hannah also testified that he purchased PCP from Gaither during this period. Ward and Gaither argue that Hannah's testimony was not credible. They rely heavily on the fact that, at one point during trial, the district court expressed doubts about Hannah's credibility. As stated, however, neither this court nor the district court is permitted to second-guess the jury's credibility determinations and we must look at the evidence in the light most favorable to the government.

It appears that defendants might be attempting to argue there was insufficient evidence to establish the drug quantity charged in Count 5. However, the jury's drug quantity finding of 10 grams or more on Count 5 only supports a maximum sentence of 20 years under § 841(b)(1)(C), the same maximum sentence that would be applicable if the jury had made no drug quantity finding at all.[6]

As to Count 9, the jury found Ward guilty of possessing with intent to distribute one kilogram or more of PCP in or about the early summer of 2000. Ward argues there is no evidence to connect him to any PCP transactions during that time and that he could not have been involved after August 20, 2000, when he was arrested. There is no merit to

---

[6] We address in greater detail the verdict forms and drug amount findings by the jury in the last issue of this order and judgment.

9

Ward's argument. It is undisputed that at least three witnesses (Nedra Hendricks, Ricky Williams, and Gerard Brown) testified that Ward was selling PCP from the 39th Street duplex during the summer of 2000 prior to his arrest. Further, even if the district court had granted the motions for acquittal, it would have been obliged at sentencing to consider all relevant conduct for sentencing purposes.

**Jury instructions**

Davis and Gaither argue the district court made two errors in instructing the jury. "We review de novo a timely challenge to a jury instruction to determine whether, considering the instructions as a whole, the jury was misled." Guidry, 199 F.3d at 1156 (internal quotation omitted). "We will not reverse unless we have substantial doubt that the jury was fairly guided." Id. (internal quotation omitted).

Defendants argue the court erred in submitting the indictment to the jury as part of a jury instruction. "It rests within the district court's discretion to submit the indictment to the jury." United States v. Klein, 93 F.3d 698, 703 (10th Cir. 1996). "[A] proper covering instruction with respect to the indictment goes a long way toward curing any potential for prejudice created by giving the indictment to the jury." Id. at 704. "[J]uries are presumed to follow their instructions." Zafiro v. United States, 506 U.S. 534, 540 (1993) (internal quotation omitted).

In this case, the jury properly was instructed that the indictment was not evidence of guilt and that defendants were presumed to be innocent. Therefore, we conclude the

district court did not abuse its discretion in submitting the indictment to the jury. Accord Klein, 93 F.3d at 704 (concluding any error in reading indictment to jury was harmless when jury was admonished that indictment was not evidence and there was overwhelming evidence of defendant's guilt); United States v. Scott, 37 F.3d 1564, 1576-77 (10th Cir. 1994) (concluding it was not reversible error to read and submit indictment to jury when jury was instructed before and after reading of indictment that it was not evidence).

Davis and Gaither also object to the multiple choice format of the verdict forms. Some of the verdict forms required the jury to find, within one of three ranges, the drug quantity involved. The special verdict forms obviously were intended to comply with Apprendi and to track the ranges set forth by § 841(b)(1), although, as we discuss later, they were not completely successful in this regard. The basis for defendants' objection to the verdict forms is not clear but it appears they argue the law requires jurors to unanimously agree on a precise amount of drugs as opposed to a range. We disagree.

Under Apprendi, drug quantity must be proven in a § 841 crime only when the government seeks a sentence in excess of the lowest statutory maximum, which, in cases involving Schedule I and II drugs, is 20 years. Otherwise, drug quantity need not be charged and the jury need not make a drug quantity finding. From these principles, it follows that, to support a greater statutory maximum sentence made applicable by conviction of a crime involving a greater drug quantity, the jury's verdict need not reflect that the jury unanimously agreed about the occurrence of specific drug transactions

11

involving precise drug quantities. Instead, the jury need only find that the charged crime involved some drug quantity equal to or greater than the amount necessary to support the sentence imposed. Therefore, in cases like this, verdict forms reflecting the ranges set forth in § 841(b)(1) are proper. Accord United States v. Smith, 308 F.3d 726, 742 (7th Cir. 2002); see also Richardson v. United States, 526 U.S. 813, 817 (1999) (stating "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime").

### Calculation of drug amount at sentencing

All three defendants argue the district court erred in its drug quantity calculation for relevant conduct purposes. The district court's determination of drug quantity is reviewed for clear error. United States v. Nieto, 60 F.3d 1464, 1469 (10th Cir. 1995). The district court's determination of drug quantity may be an approximation, and the government's burden is only to establish the drug quantity by a preponderance of the evidence. United States v. Becker, 230 F.3d 1224, 1234-35 (10th Cir. 2000). Nevertheless, an estimate used to establish the offense level under the Guidelines must have "some basis of support in the facts of the particular case" and must have "sufficient indicia of reliability." United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995). "Even after Apprendi, district courts are empowered to make findings to a preponderance of the evidence in order to determine an appropriate offense level under the Sentencing

12

Guidelines." United States v. Cernobyl, 255 F.3d 1215, 1220 n.1 (10th Cir. 2001).

"The Sentencing Guidelines require that all relevant conduct be considered at sentencing." United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002) (citing U.S.S.G. § 1B1.3). "Drug quantities associated with illegal conduct for which a defendant was not convicted are to be accounted for in sentencing, if they are part of the same conduct for which the defendant was convicted." United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993).

Ward: Ward's PSR attributed 19.95 kilograms of a mixture and substance containing PCP to Ward as relevant conduct. The district court adopted the PSR in part and found Ward was accountable for 16.47 kilograms. Any attribution between 10 and 30 kilograms of a mixture and substance containing PCP would have resulted in a base offense level of 36. See U.S.S.G. § 2D1.1(c)(2). Ward argues he should have been held accountable only for 6.93 kilograms, which would have resulted in a base offense level of 34. See U.S.S.G. § 2D1.1(c)(3).

Ward focuses only on the evidence admitted in support of the drug amount charged in Count 5 of the indictment. He contends that evidence did not support the court's drug quantity calculation. Ward's approach, which limits the evidence the court may consider, is not consistent with the Guidelines. U.S.S.G. § 3D1.2 provides: "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule . . . (d) [w]hen the

13

offense level is determined largely on the basis of . . . the quantity of a substance involved."

Further, Ward has failed to establish the district court committed clear error in its drug quantity findings. Ward argues there is no evidence that he directly participated in certain PCP purchases in California, that he transported any PCP, or that he participated in selling several shipments of PCP that were attributed to him by the district court. In conspiracy cases, however, "[r]elevant conduct includes reasonably foreseeable acts of co-conspirators in furtherance of their conspiracy." Mendez-Zamora, 296 F.3d at 1020 (citing U.S.S.G. § 1B1.3(a)(1)(B)). In this case, it was not clearly erroneous for the district court to hold Ward responsible for the conduct of his co-conspirators. Ricky Williams and Gerard Brown, both members of the conspiracy, testified that Ward, Davis, and Gaither pooled their money to purchase PCP and then split the proceeds from sales. Further, there is ample evidence that Ward directed the activities of lower echelon members of the conspiracy. Although Ward questions the credibility of some of the government's trial witnesses, credibility determinations are for the district court. See United States v. McIntyre, 997 F.2d 687, 709 (10th Cir. 1993).

Davis: Davis' PSR attributed 18 ounces of powder cocaine, one-half pound of marijuana, and approximately 48.23 kilograms of a mixture and substance containing PCP to him as relevant conduct. After conversion of the differing controlled substances to marijuana equivalency, the PSR attributed 48,337.8 kilograms to Davis. See U.S.S.G.

14

§ 2D1.1, Cmt. n.10 (setting forth drug equivalency table that provides the "means for combining differing controlled substances to obtain a single offense level" and instructing that, in cases involving different controlled substances, all drugs should be converted to marijuana equivalency). The district court reduced the amount of mixture and substance containing PCP attributable to Davis by approximately 8.14 kilograms, but otherwise adopted the drug quantity findings of the PSR. In sum, after conversion of the differing controlled substances to marijuana equivalency, the court attributed approximately 40,192.83 kilograms to Davis. Any attribution of 30,000 kilograms or more of marijuana equivalence would have resulted in a base level of 38. U.S.S.G. § 2D1.1(c)(1). Therefore, any error committed by the district court in attributing drugs to Davis is harmless unless the court's errors amount to more than 10,192.83 kilograms, marijuana equivalence.

On appeal, Davis renews the numerous objections he made at his sentencing hearing. Of primary importance, however, Davis argues the district court committed clear error in adopting ¶ 22 of the PSR, which attributed 368 ounces of PCP (approximately 10,432.8 kilograms, marijuana equivalence) to him based on activities of the conspiracy in late 1997 and early 1998. If adoption of ¶ 22 was clearly erroneous, Davis' offense level should be reduced from 38 to 36. On the other hand, if its adoption was not clearly erroneous, even if Davis would prevail on all of his other arguments regarding the court's drug quantity findings, a reduction of Davis' base offense level would not be warranted.

We conclude the district court's adoption of ¶ 22 is sufficiently supported by evidence in the record. According to Agent Farabow's testimony at Davis' sentencing hearing, an informant (Donald Miles) admitted he became a partner in the PCP business with Davis and Gaither in late 1997. Miles recalled the three pooled their money to purchase PCP on five occasions, in quantities of 16, 32, 64, and 128 ounces on two occasions. It is undisputed that Miles' statements were corroborated in part by the trial testimony of Tamara Gunter and Latina Grayson. Davis questions the credibility of Miles, Gunter, and Grayson, but it was not clearly erroneous for the district court to credit their statements. Davis also notes Miles never testified and statements attributed to Miles by Agent Farabow were hearsay. However, in determining relevant conduct for sentencing, the district court's scope of review is not limited to evidence admitted at trial or even to evidence that would have been admissible at trial. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Davis also criticizes the district court's reliance on the testimony of couriers who could only estimate the amounts of PCP they carried. It is well established that "[e]stimates are an acceptable method of calculating drug quantities so long as the information supporting the estimate has a minimum indicia of reliability." McIntyre, 997 F.2d at 709. Further, Davis fails to address the fact that the estimates were, in many

16

instances, corroborated by his own recorded telephone conversations and by testimony of mid-level dealers and users who saw members of the conspiracy dividing and selling quantities of PCP.

Gaither: Gaither's PSR attributed 18 ounces of powder cocaine, one-half pound of marijuana, and approximately 44.60 kilograms of a mixture and substance containing PCP to him as relevant conduct. After conversion of the differing controlled substances to marijuana equivalency, the PSR attributed 44,709.03 kilograms to Gaither, which would have resulted in a base offense level of 38. The district court reduced the amount of mixture and substance containing PCP by approximately 8.05 kilograms, but otherwise adopted the drug quantity findings of the PSR. After conversion of the differing controlled substances, the court attributed approximately 36,652.28 kilograms to Gaither, which resulted in a base offense level of 38.

Any attribution of 30,000 kilograms or more of marijuana equivalence to Gaither would have resulted in a base offense level of 38. See U.S.S.G. § 2D1.1(c)(1). Therefore, any error in attributing drugs to Davis is harmless unless the errors amount to more than 6,652.28 kilograms, marijuana equivalence. Gaither makes arguments similar to those made by Ward and Davis. For reasons stated above, we are not persuaded that the district court committed any error in making its drug quantity findings.

**Upward adjustments to base offense levels**

This court reviews the district court's legal interpretation of the Sentencing

Guidelines de novo and its factual findings for clear error. United States v. Gardiner, 931

F.2d 33, 34 (10th Cir. 1991).

Role in offense. U.S.S.G. § 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense
level as follows:
(a) If the defendant was an organizer or leader of a criminal activity
that involved five or more participants or was otherwise extensive, increase
by 4 levels.
(b) If the defendant was a manager or supervisor (but not an
organizer or leader) and the criminal activity involved five or more
participants or was otherwise extensive, increase by 3 levels.
(c) If the defendant was an organizer, leader, manager, or supervisor
in any criminal activity other than described in (a) or (b), increase by 2
levels.

"The gravamen of the enhancement is either the exercise of control over other

participants or the organization of others for the purpose of carrying out the crime."

United States v. Tagore, 158 F.3d 1124, 1131 (10th Cir. 1998). The commentary to

§ 3B1.1(a) lists several factors that a court may consider in determining a defendant's

status as an organizer or leader, including: the exercise of decision-making authority, the

nature of participation in the commission of the offense, the recruitment of accomplices,

the degree of participation in planning or organizing the offense, the nature and scope of

the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Cmt. n.4.

Ward argues the district court committed clear error in finding he was a leader or

organizer of the conspiracy. At trial, however, Gerard Brown testified that he was

18

recruited into the conspiracy by Ward. There was also evidence that Ward arranged and directed the travel of drug couriers and that lower echelon members of the conspiracy rented motel rooms and cars at the direction of Ward and on his behalf. Given this evidence, it was not clearly erroneous for the court to conclude that Ward was a leader or organizer of the conspiracy.

Gaither's argument on this issue is puzzling. He contends that instead of applying the four-level enhancement under § 3B1.1(a), the court should have applied a two-level enhancement under § 3B1.1(c). However, subsection (c) is applicable only when the relevant criminal enterprise involves four or fewer participants and is not otherwise extensive in scope. In this case, it is clear the conspiracy involved five or more people. Gaither does not dispute this point. Further, several members of the conspiracy testified they sold or transported PCP for Gaither or otherwise acted at his direction. Members of the conspiracy, including Darcus Vann and Lanea Moland, testified they were recruited by Gaither. In light of this evidence, it was appropriate for the district court to enhance Gaither's offense level by four points pursuant to § 3B1.1(a).

*Obstruction of justice enhancement*: All three defendants contend the district court erred in concluding they obstructed justice. U.S.S.G. § 3C1.1(a) provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

19

The commentary provides a non-exhaustive list of examples of conduct to which this adjustment applies: "threatening, intimidating, or otherwise influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, Cmt. n.4.

In this case, there is undisputed evidence that defendants threatened and attempted to intimidate several government witnesses. Among those witnesses threatened were Latina Grayson, Gerard Brown, Nedra Hendricks, and Marion Wright. Defendants dismiss their statements as mere "angry expressions" that do not "rise to the level" of obstruction of justice. Defendants also note that, in many instances, they were not in the position to carry out their threats. However, defendants clearly intended to deter government witnesses from testifying or to otherwise intimidate and influence them. Such conduct clearly falls within the scope of § 3C1.1. Further, § 3C1.1 is applicable when a defendant makes threats in an *attempt* to influence a witness, regardless of whether the attempt is successful or regardless of the chances of actually carrying out the threat. Given all of the evidence presented at defendants' respective sentencing hearings, it was not clearly erroneous for the district court to find that defendants attempted to obstruct justice.

Finally, we note that Ward and Davis make a unique but frivolous Sixth Amendment argument. They contend that because Gerard Brown was cooperating with the government when they threatened him, their Sixth Amendment right to counsel was

violated when their statements to him were introduced into evidence. "[T]he Sixth Amendment renders inadmissible in the prosecution's case in chief statements 'deliberately elicited' from a defendant without an express waiver of the right to counsel." Michigan v. Harvey, 494 U.S. 344, 348 (1990). Here, there is no indication that Brown deliberately elicited the threats and, therefore, defendants' Sixth Amendment rights were not violated.

*Possession of firearm*: Davis and Gaither argue there was no evidence to support a two-level enhancement of their offense levels under U.S.S.G. § 2D1.1(b)(1), which provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

"Possession of a weapon in connection with a drug trafficking offense is established if the government proves by a preponderance of the evidence that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." See United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998) (internal quotation omitted). "Once the government establishes that the gun was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to show it is clearly improbable that the weapon was related to the offense." Id. (internal quotation omitted). The necessary nexus of the weapon, drug trafficking, and defendant may be established by showing that "the weapon was located nearby the general location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Id.

(internal quotation omitted). "[W]hen the offense committed is conspiracy, these proximity conditions are met when the weapon is discovered in a place where the conspiracy was carried out or furthered." United States v. Apple, 962 F.2d 335, 338 (4th Cir. 1992). The sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991).

In this case, numerous witnesses testified that they saw firearms at locations used by defendants for packaging and selling drugs. Additionally, at the sentencing hearings, Agent Farabow testified that, according to Miles, Ward, Davis, and Gaither frequently carried firearms to protect their drugs and drug proceeds. In response to this evidence, defendants merely assert they never used firearms and they state in conclusory fashion that they did not possess firearms. Under these circumstances, it was not clearly erroneous for the district court to find that Davis and Gaither possessed firearms in connection with the charged conspiracy.

*Reckless endangerment during flight from police*: Gaither received a two-point upward adjustment for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. Gaither contends, as he did in the district court, that a two-level enhancement pursuant to § 3C1.1 cannot be based on a defendant's flight from police. On that point, he is correct. See U.S.S.G. § 3C1.1, Cmt. n.5. But, he has no response to § 3C1.2, which requires such an enhancement when "the defendant recklessly created a substantial risk of death or

22

serious bodily injury to another person in the course of fleeing from a law enforcement officer."

Further, even if Gaither had made a proper objection to the § 3C1.2 enhancement, we would not conclude the court committed clear error. See United States v. Conley, 131 F.3d 1387, 1389 (10th Cir. 1997) (stating we review for clear error a district court's determination that a defendant's flight from police constituted reckless endangerment). While "[n]ot every flight from a crime scene . . . will constitute reckless endangerment under § 3C1.2," id. at 1390, the record in this case was adequate to support the district court's application of § 3C1.2 to Gaither. For purposes of § 3C1.2,

> "Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

U.S.S.G. § 2A1.4, Cmt. n.1 (referred to in U.S.S.G. § 3C1.2, Cmt. n.2). "The standard of care envisioned by the Guidelines is that of the reasonable person, not the reasonable fleeing criminal suspect." United States v. Brown, 314 F.3d 1216, 1221 (10th Cir. 2003) (citing Conley, 131 F.3d at 1389). "During flight" is to be "construed broadly," and the adjustment "is applicable where the conduct occurs in the course of resisting arrest." U.S.S.G. § 3C1.2, Cmt. n.3.

In this case, an Oklahoma City police officer testified at trial that on May 23, 2001, he observed a vehicle traveling 63 miles per hour in a 30-mile-per-hour residential zone. It was later determined that Gaither was driving the vehicle. When the officer activated

23

the emergency lights of his patrol car, Gaither accelerated and ran a red light.  Gaither

finally stopped the vehicle, but then fled on foot.  The officer caught Gaither and, after a

struggle, was able to handcuff him.  Relying on this testimony, the district court found

that Gaither's flight amounted to reckless endangerment.  The court's finding was not

clearly erroneous.  See United States v. Gonzalez, 71 F.3d 819, 836-37 (11th Cir. 1996)

(§ 3C1.2 enhancement justified where defendant operated vehicle, in reverse, at high rate

of speed on residential street); United States v. Velasquez, 67 F.3d 650, 655 (7th Cir.

1995) (holding flight at high rate of speed on residential street was enough to support

enhancement under § 3C1.2).

### Acceptance of responsibility

Davis and Gaither argue the district court should have reduced their respective

offense levels two points for acceptance of responsibility because they admitted during

closing arguments at trial that they sold drugs.

Refusal to grant an adjustment for acceptance of responsibility is a factual question

which we review for clear error.  See United States v. Hawley, 93 F.3d 682, 689 (10th

Cir. 1996).  "The sentencing judge is in a unique position to evaluate a defendant's

acceptance of responsibility.  For this reason, the determination of the sentencing judge is

entitled to great deference on review."  U.S.S.G. § 3E1.1, Cmt. n. 5.  "Because of our

deference to the trial court's assessment of credibility and the clearly erroneous standard

we apply, the judgment of the district court on this issue is nearly always sustained."

24

United States v. Whitehead, 912 F.2d 448, 451 (10th Cir. 1990) (affirming district court's

denial of acceptance of responsibility reduction despite defendant's guilty plea). It is

defendant's burden to prove he has accepted responsibility. See United States v.

Spedalieri, 910 F.2d 707, 712 (10th Cir. 1990).

We agree with the district court that Davis and Gaither failed to meet their burden.

U.S.S.G. § 3E1.1, Cmt. n.2, provides that an adjustment for acceptance of responsibility:

> is not intended to apply to a defendant who puts the government to its
> burden of proof at trial by denying the essential factual elements of guilt, is
> convicted, and only then admits guilt and expresses remorse. Conviction by
> trial, however, does not automatically preclude a defendant from
> consideration for such a reduction. *In rare situations a defendant may*
> *clearly demonstrate an acceptance of responsibility for his criminal*
> *conduct even though he exercises his constitutional right to a trial.* This
> may occur, for example, where a defendant goes to trial to assert and
> preserve issues that do not relate to factual guilt (e.g., to make a
> constitutional challenge to a statute or a challenge to the applicability of a
> statute to his conduct). In each such instance, however, a determination that
> a defendant has accepted responsibility will be based primarily upon pre-
> trial statements and conduct.

(Emphasis added.) Because Davis and Gaither put the government to its burden of proof

at trial, we must determine whether this is one of the "rare situations" in which a

defendant clearly has demonstrated an acceptance of responsibility despite the fact that he

went to trial. Defendants admitted at trial only what they were forced to concede by the

extensive evidence against them, and no more. There is no indication in the record that

they made forthright pretrial admissions of their guilt or that they ever made a full

admission of their guilt. Even on appeal, Davis and Gaither contest their responsibility

25

for drug amounts attributable to them. It is their right to do so. However, given their consistent denials of responsibility, it was not clearly erroneous for the district court to refuse to grant them a two-point adjustment for acceptance of responsibility. Accord United States v. Johnston, 353 F.3d 617, 627 (8th Cir. 2003) (holding it was not clearly erroneous for district court to deny acceptance of responsibility adjustment when defendant admitted to distributing methamphetamine but went to trial to dispute the charged quantity); United States v. Maliszewski, 161 F.3d 992, 1024 (6th Cir. 1998) (holding it was not clearly erroneous for district court to deny acceptance of responsibility adjustment when defendant "consistently denied responsibility" for drug amounts attributed to him).

**Verdict forms**

At oral arguments in these cases, this court raised sua sponte an apparent Apprendi violation and ordered the parties to submit supplemental briefs. Our briefing order described deficiencies in the verdict forms:

Title 21, Section 841, of the United States Code delineates the maximum statutory penalties available for crimes involving phencyclidine (PCP). See 21 U.S.C. § 841(b)(1). Significantly, the statute distinguishes between cases which involve pure PCP and cases like the present cases which involve a *mixture and substance* containing a detectable amount of PCP.

Section 841(b)(1)(A)(iv) delineates life imprisonment as the maximum statutory sentence for crimes involving 1 kilogram or more of a mixture and substance containing PCP. Section 841(b)(1)(B)(iv) delineates 40 years as the maximum sentence for crimes involving 100 grams or more but less than 1 kilogram of a mixture and substance containing PCP. This court has held that, under Apprendi, sentences imposed pursuant to § 841(b)(1)(A) or (B) must be supported by a jury's drug quantity finding. See United States v. Jones, 235 F.3d

26

1231, 1236 (10th Cir. 2000).

Subsections (b)(1)(C) and (D) address drug crimes involving amounts less than necessary to support a sentence under subsection (b)(1)(B) and crimes involving an undetermined amount. Subsection (b)(1)(C) addresses crimes involving Schedule I or II drugs. PCP is a Schedule II drug. See 21 U.S.C. § 811(a)(1); 21 C.F.R. § 1308.12(e). Under subsection (b)(1)(C), the maximum sentence permitted is generally 20 years.

There is one caveat to the generally applicable maximum statutory sentences.[7] When a defendant has a prior felony drug conviction, the maximum sentences under subsections (b)(1)(B) and (C) are enhanced. In such a case, the maximum sentence permitted by paragraph (B) is life imprisonment and the maximum sentence permitted by paragraph (C) is 30 years. Under Apprendi's own terms, the fact of a prior felony drug conviction need not be submitted and proved to a jury.

In this case, the verdict forms invited the jury, upon reaching a guilty verdict, to make drug quantity findings as to certain counts. Specifically, the jury was asked to find beyond a reasonable doubt that the amount involved fell within one of three ranges: (1) 1 kilogram or more, (2) 10 grams or more but less than 1 kilogram, or (3) less than 10 grams. The middle range (10 grams to 1 kilogram) apparently was intended to reflect the range set forth in § 841(b)(1)(B)(iv). As discussed above, however, for a crime involving a mixture and substance containing PCP, subsection (b)(1)(B) is only applicable when there is a jury finding that the crime involved 100 grams or more. A jury finding that 10 grams or more was involved does not support a sentence imposed pursuant to subsection (b)(1)(B).

In sum, the district court imposed sentences on the following counts that are not supported by the jury's drug quantity findings as recorded in the verdict forms: (1) as to defendant Donte Ward, Counts 5 and 11; (2) as to defendant Michael Gaither, Counts 5, 20, 24, 29, 45, 49, 57, 63, 66 and 70; and (3) as to defendant Jason Davis, Counts 5, 17 and 29. It appears that subsection (b)(1)(C) provides the applicable statutory maximum sentence for each of these counts. Because Davis has a prior felony drug conviction, he is subject to paragraph (C)'s enhanced maximum sentence of 30 years.

---

[7] There is a second caveat as well. If death or serious bodily injury results from the use of such substance, the defendant shall be sentenced to a term of imprisonment of not less than 20 years or more than life. 21 U.S.C. § 841(b)(1)(C). Those circumstances were not relevant to the present cases and, therefore, not referenced in our briefing order.

March 16, 2004, Order at 2-4 (footnote added).  After receipt and review of the parties' supplemental briefs, we remain convinced there has been a violation of Apprendi on the counts identified.  We are left then to address the appropriate remedy.

Although defendants did not raise the Apprendi issue, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b).  We previously have held that it is plain error to impose a sentence pursuant to § 841(b)(1)(A) or (B) when the requisite drug quantity is not found by a jury.  See United States v. Price, 265 F.3d 1097, 1108 (10th Cir. 2001) (concluding a sentence in excess of 20 years, when indictment failed to state quantity and jury was not instructed to find quantity beyond a reasonable doubt, was plain error).

Plain error warrants reversal and remand for resentencing only if the error affects the "substantial rights" of a defendant.  See United States v. Lott, 310 F.3d 1231, 1243 (10th Cir. 2002).  When an Apprendi error does not affect a defendant's total length of imprisonment, the error does not affect the defendant's substantial rights.  Id. at 1241-45 (concluding Apprendi error was plain but that defendant's substantial rights were not affected where resentencing still would have resulted in a 125-year term of imprisonment – the "effective equivalent" of a life sentence).  In this case, correcting the Apprendi errors would have no impact upon defendants' total terms of imprisonment.  Each defendant received life sentences on counts where there was no Apprendi problem: Ward on Counts 1 and 9; Davis on Counts 1, 9, and 15; and Gaither on Counts 1 and 27.

28

Further, defendants have had ample opportunity to direct our attention to any actual or potential detrimental effect of the <u>Apprendi</u> error, but have identified none.  Therefore, we conclude reversal and remand for resentencing is not warranted.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge