# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-3797/05-4030

_____

United States of America,     *
                          *
     Appellee/Cross-Appellant,     *
                          *   Appeals from the United States
    v.                            *   District Court for the District
                          *   of North Dakota.
Duane Huber, Duane Huber, doing     *
business as Huber Farms General     *
Partnership; Huber Farms, Inc.,     *
                          *
     Appellants/Cross-Appellees.     *

_____

Submitted: May 17, 2006
Filed: September 12, 2006

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

In this fraud action, we revisit Duane Huber's direct appeal, and the government's cross-appeal, of Huber's conviction and sentence.[1] We affirm.

_____

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

## I.    BACKGROUND

We recounted the underlying facts in great detail in our prior opinion, United States v. Huber, 404 F.3d 1047 (8th Cir. 2005) (Huber I), and decline to do so again. Briefly, Huber and his corporate farming entities were convicted of making fraudulent statements to the government, committing tax fraud, and laundering money, acts designed to obtain more farm program benefits than were warranted by Huber's farming operations. Huber was sentenced to sixty-months' imprisonment, and the corporate farming entities were given probation. In addition, Huber was ordered to forfeit approximately $5.9 million in the form of a money judgment under the money-laundering charge. In Huber I, we affirmed the conviction, but remanded to the district court to recalculate the forfeiture amount[2] and for re-sentencing in light of the recently decided United States v. Booker, 543 U.S. 220 (2005). 404 F.3d at 1060-63. Upon remand, the district court reduced the forfeiture judgment to approximately $3.9 million, re-sentenced Huber to sixty-months' imprisonment and the corporations to probation, and again refused to order a fine or restitution. Both parties appeal, raising numerous claims of error.

---

[2]At trial, the jury found, by a preponderance of the evidence, the corpus of the money-laundering conspiracy to be approximately $5.9 million. In Huber I, we held that for purposes of the forfeiture issue, certain sums (uncollected insurance subsidies and premiums) needed to be subtracted from the jury's $5.9 million finding. These subsidies and premiums were paid directly from the government to insurers and never collected by the participants in the money-laundering scheme; therefore these sums could not be "laundered." 404 F.3d at 1061.

## II.   DISCUSSION

### A.   Huber's Appeal

Huber's primary complaint is that he received the same sentence upon remand. He contends that the district court disregarded the Booker mandate by simply imposing the same sentence. Huber also argues that his Sixth Amendment rights were violated because the jury found facts used for sentencing enhancements by only a preponderance of the evidence. Notably, Huber does not contend that the district court erroneously applied the guidelines. To the contrary, he admits that his is a "guideline sentence." E.g., United States v. Haack, 403 F.3d 997, 1003 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005).

First, contrary to Huber's argument, facts used to enhance a sentence, post-Booker, do not need to be found beyond a reasonable doubt. The Booker court remedied the Sixth Amendment problem by making the guidelines advisory, rather than mandatory. 543 U.S. at 246. Accordingly, Huber's Sixth Amendment arguments are without merit.

Essentially, Huber argues that his sentence is unreasonable because it is a guidelines sentence, and more specifically, the same guidelines sentence he was given before Blakely[3] and Booker threw the federal sentencing scheme into a state of upheaval. We reject this reasoning. First, Huber's argument does not withstand our circuit's overwhelming post-Booker precedent that a sentence within the guidelines range is presumptively reasonable. E.g., United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006). Second, Huber's description of the district court's actions upon re-sentencing is a textbook example of post-Booker sentencing procedure.

---

[3]Blakely v. Washington, 542 U.S. 296 (2004).

Upon remand, the district court first noted that the guidelines were now advisory under Booker. Citing Haack, the court acknowledged that the Eighth Circuit has directed the district courts to consult the guidelines during sentencing, and then "individualiz[e]" the sentence by consulting the factors set forth in 18 U.S.C. § 3553(a). The district court then proceeded to do just that, and thus performed its duties to the letter on re-sentencing. The sentence is not invalid simply because the district court came to the same conclusions both pre- and post-Booker. We reject Huber's arguments that the district court erred by reimposing his sixty-month sentence.

We also reject Huber's argument that he was entitled to have the forfeiture amount decided by the jury beyond a reasonable doubt, citing both Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."), and Booker. At trial, the court instructed the jury to find the forfeiture amount by a preponderance of the evidence, and the jury decided that amount would be approximately $5.9 million. Criminal forfeiture is an indeterminate sentencing scheme and accordingly, Huber was not entitled to a reasonable doubt forfeiture instruction under the Apprendi line of reasoning. In United States v. Hively, 437 F.3d 752, 763 (8th Cir. 2006), we found that criminal forfeiture proceedings were unaffected by Booker, noting that the Booker Court expressly found that the forfeiture provision of the sentencing statute, 18 U.S.C. § 3554, was still "perfectly valid." 543 U.S. at 258.

We affirm the district court in its entirety with respect to Huber's direct appeal of his sentence.

## B.    Government's Cross-Appeal

### 1. Sentence

The government assigns eight errors, and almost forty pages of briefing, to the district court's application of the sentencing guidelines to Huber's case. We distill those alleged errors down to three primary claims–that the district court miscalculated and misapplied the guidelines when determining the base offense level; that the district court erred in refusing to enhance or adjust Huber's sentence upward; and that the district court erred in departing downward. We review the district court's interpretation and application of the sentencing guidelines de novo. United States v. Vasquez-Garcia, 449 F.3d 870, 872 (8th Cir. 2006). We review the district court's factual findings for clear error. Id. A critical starting point in our review is whether the district court correctly calculated the advisory guideline range. An incorrect application of the guidelines can require remand, regardless of whether the resulting sentence was reasonable. United States v. Mashek, 406 F.3d 1012, 1017-18 (8th Cir. 2005).

The government's primary complaint with the district court's base offense calculation involves the determination of the loss to the government. Key issues pervading trial, sentencing, and the forfeiture proceedings were the amount of the laundered funds and the total value of the government's loss. There is a distinction between these two concepts–the value of the laundered funds refers to the amount of money that Huber funneled into and out of the farming operations while obtaining farm program benefits. The total amount of loss to the government is a much more illusory figure referring to all loss to the government, on all twenty charged counts, as a result of the illicit farm program scheme. The difficulty with this latter figure is that while Huber was convicted of maintaining illegal farming operations in order to obtain farm program benefits to which he was not entitled, it is clear that he also conducted a legitimate farming operation. The funds involved in both the legitimate

and illegitimate farming operations were continually co-mingled.  So it is not easy to determine which funds in the entire Huber farms enterprise were wrongly obtained.  Further complicating matters, the loss to the government amount and the sentencing guidelines calculation are inextricably intertwined.

The guideline for determining the base offense level in this money-laundering case is 2S1.1.  Guideline 2S1.1 provides alternative methods for determining a defendant's base offense level.  Section 2S1.1(a)(1) describes the first method of determining the base offense level: if both of two specified conditions are met, the offense level is the same as that "for the underlying offense from which the laundered funds were derived." U.S.S.G. § 2S1.1(a).  The two conditions which must be satisfied are that the defendant actually committed the underlying offense, and that the offense level for that offense "can be determined."  Id.  If either of these two conditions are not met, the alternative method, found in section 2S1.1(a)(2), provides that the base offense level is eight plus a number of offense levels from a designated table "corresponding to the value of the laundered funds."  Id. § 2S1.1(a)(2).

Huber clearly committed the underlying fraud offense, satisfying the first condition of 2S1.1(a)(1).  However, the only way that the base offense level for this underlying fraud count can be determined is if the total amount of loss to the government can be determined.  The district court decided that it could not do this, finding that because a calculation of the total amount of loss to the government was impracticable, if not impossible to make, section 2S1.1(a)(2) should be used to set Huber's offense level.  The government argues that section 2S1.1(a)(1) should have been used instead.  It argues that the total amount of loss was determinable, and sets the figure at approximately $19 million.

The district court rejected this position because of the co-mingling problem described above.  Instead, the district court used subsection (a)(2) to calculate the guideline.  The first thing the district court had to do under the (a)(2) analysis was to

assign a value to the laundered funds. This calculation was based on the following: during the forfeiture proceedings, the jury was given Government Exhibit 1, which contained totals of grain sales, crop insurance, and farm payments for various years, ranging from 1994 through 1999, received by (1) four of the farmers Huber "used" to obtain extra farm program benefits, (2) Huber General Partnership, and (3) Duane Huber. The "Grand Total" on Exhibit 1, which accounted for the total proceeds from grain sales, crop insurance, and farm program payments from these three groups (the four farmers, the partnership, and Huber) was $14,106,213. The grand total attributed to the four farmers was $5,876,970–the same amount that the jury determined should be forfeited by Huber. This is also the amount that the district court chose as the value of the laundered funds for purposes of the base offense calculation in section 2S1.1(a)(2). The district court, noting that the government argued the value was approximately $19 million and that Huber argued it was zero, compromised these positions, and, using the jury's forfeiture decision as a guide, set the value of the laundered funds at $5,876,970.

After the value of the laundered funds was determined, pursuant to section 2S1.1(a)(2), the district court referred to a table in section 2B1.1 to assign a number to this value. Because the value of the laundered funds fell into a range of $2.5 to $7 million, the district court added eighteen points to the eight already directed by section 2S1.1(a)(2) to set Huber's base offense level at twenty-six. The court also added two mandatory points because Huber's offense was a violation of 18 U.S.C. § 1956, arriving at a final base offense level of twenty-eight.

While we review the district court's application of the guidelines de novo, the district court's decision about whether the total amount of loss in the case was practicable to determine was a factual issue for the district court–in this case, a court that painstakingly presided over this lengthy trial, numerous hearings, and two sentencing proceedings. In light of this, we cannot say that the district court clearly erred in its factual determination that the total amount of loss to the government was

impracticable, if not impossible, to determine. Indeed, while discussing restitution, the government acknowledged "the court was interested in knowing how much loss there would have been, but for the fraud committed . . . by Mr. Huber and the entities. We were unable to fully establish that or answer all of the court's questions, but we believe the amount of loss was in the neighborhood of $8 million." In light of this admission, our own review of the voluminous record, and the unique circumstances of this case, the district court did not clearly err in using 2S1.1(a)(2) to determine Huber's offense level or in setting the offense level at twenty-eight.[4]

The government next argues that the district court erred in not enhancing Huber's sentence for a plethora of reasons: for using sophisticated means to launder the money, for deriving more than $1 million in gross receipts, for abuse of trust, for being an organizer or leader, and for obstruction of justice. We review the district court's factual findings regarding enhancements for clear error, but we apply a de novo review to the application of the enhancements to the facts found by the district court. United States v. Sitting Bear, 436 F.3d 929, 933 (8th Cir. 2006).

At the original sentencing hearing in June 2003, the district court rejected the government's entreaties for enhancements. With regard to obstruction, the court stated that there was nothing that would justify that enhancement. For the remaining suggested enhancements, the district court agreed with the probation officer who drafted the Presentence Investigation Report that the evidence at trial did not support the remaining enhancements. With regard to the sophisticated means enhancement,

---

[4]The government also briefly argues that the district court erred by not calculating offense levels for the conspiracy to defraud and other fraud-related counts. The district court analyzed this grouping issue in a Sentencing Memorandum dated March 28, 2003, and decided that (based on the government's recommendation), because the money-laundering conspiracy had the highest offense level, it need not calculate offense levels for the remaining counts. We affirm the district court's decision on this issue.

the probation officer found that since Huber did not use shell corporations, offshore accounts, or "layer" transactions, the "sophisticated" enhancement should not apply. With regard to the remaining suggested enhancements, the probation officer found that they were not justified by the evidence presented at trial. The district court was not persuaded that the facts of the case warranted the enhancements, and we cannot say it clearly erred in so deciding. Accordingly, we affirm the district court's decision not to enhance Huber's sentence.

The government also argues the district court erred in departing downward. Applying its reasoning regarding the base offense level calculation, the district court determined that because Huber's legitimate farming funds were inextricably co-mingled with funds obtained illegally in the farm program scheme, the seriousness of the offense was substantially overstated. The district court also found that Huber's past record of providing for his community supported a minimal departure. Thus, the district court departed downward three levels pursuant to U.S.S.G. § 5K2.0. We review the district court's decision to depart downward for an abuse of discretion, United States v. Bueno, 443 F.3d 1017, 1023 (8th Cir. 2006), and find none here.

The district court did not clearly err in its factual determination that the high value of the laundered funds led to a base offense level that substantially overstated the seriousness of the offense. Despite the government's strong protestations to the contrary, we agree with the district court that the inextricable co-mingling of funds, as well as the relatively small net profit Huber actually realized, take this money-laundering scheme out of the garden variety. Thus, the district court did not abuse its discretion in deciding to depart downward on this basis.

Nor did the district court err in finding that Huber's lifetime contributions to his community warranted a minimal departure. A defendant's charitable conduct is not an appropriate basis for a downward departure unless it is exceptional. United States v. Woods, 159 F.3d 1132, 1136 (8th Cir. 1998). The district court noted that Huber

had loaned money to neighbors and fellow farmers in need, over a number of years, and that this generosity had saved farms from foreclosure and helped finance the start-up and continuation of businesses in the local community. The district court decided that this conduct compared favorably to that described in Woods, 159 F.3d at 1136-37 (affirming downward departure on this basis where the defendant took two troubled young women into her home and paid for their schooling, and also helped the elderly). We cannot disagree, and like the Woods court, note that the district court found Huber's contributions exceptional, and we "have no basis for holding that they were not." Id.

## 2. Restitution

The government next argues that the district court erred when it did not order restitution during re-sentencing. In Huber I, we noted that the delay associated with the complex task of calculating the loss to the government was "a permissible ground for refusing to award restitution." 404 F.3d at 1063. The picture had not become any clearer at re-sentencing, where, as previously discussed, the government acknowledged that it was "unable to fully establish" the amount of loss in the case. We affirm the district court's refusal to award restitution in this case.

## 3. Fine

Likewise, the government argues the district court erred in refusing to fine the defendants at re-sentencing. In Huber I, we noted that "[w]hile we find no error in the district court's observation that the $5.9 million forfeiture judgment adequately covered the ground a fine would cover," we left the matter open on remand since the amount of forfeiture would change. Id. At re-sentencing, the district court found that

the $3.9 million forfeiture award still adequately covered the ground that a fine would cover.  We again find no error.

## 4.  *Forfeiture Amount*

The government next argues that the district court improperly reduced the forfeiture award.  More to the point, at re-sentencing and now on appeal, the government attempts to relitigate the entire forfeiture amount, instead of just focusing on the amount of premium subsidy and offset amounts, as directed by our opinion in Huber I.  In Huber I, we directed the district court to subtract from the total forfeiture amount, decided by the jury to be approximately $5.9 million, uncollected insurance subsidies. Notwithstanding, the government argues that the total corpus should be $19 million, and that the insurance subsidies should be subtracted from that amount.  The government asserts that in Huber I, the court did "not fully appreciate facts related to the forfeiture issue."  Though the government disagreed with our conclusion in the prior opinion that the corpus totaled $5.9 million, "[g]iven the court's conclusions and breadth of the remand, the United States opted to address the issue at re-sentencing, and (if needed) in a second appeal, rather than request rehearing at the circuit court level."  This approach was error, because the law of the case precludes it from arguing for a different total in this appeal.

The law-of-the-case doctrine requires a trial court to follow the decision of an appellate court with respect to all issues addressed by that opinion.  United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995).  In Huber I, we directed the district court to "reduce its forfeiture judgment."  At re-sentencing, the district court wisely noted that "I am directed to reduce the forfeiture judgment, not add to it.  I am directed to reduce it in some fashion. . . .  I will reduce it."  The government informed the district court that approximately $1.9 million of insurance premium charges and subsidies were never paid to the participants in the money-laundering conspiracy.  The district court

appropriately reduced the forfeiture judgment by that amount.  We reject the government's attempts to litigate this issue further.

### 5.  *Joint and Several Liability*

Finally, the government argues that the district court erred at re-sentencing by refusing to order a joint and several forfeiture judgment among all defendants convicted of the money-laundering conspiracy.  The issue of whether the forfeiture should be joint and several between Huber and the corporate entities was submitted to the jury, which declined to impose such liability.  The district court declined to disturb the jury's verdict on this issue, as do we.

## III.  CONCLUSION

We commend the district court for the four years of work it has done on this complicated case, and affirm.

_____