**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 21, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SHEILA DIANA FRENCH,

    Defendant-Appellant.

No. 07-5091

(D.C. No. 03-CR-181-006-JHP)
(N. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, BRORBY,** and **EBEL**, Circuit Judges.


Defendant Sheila Diana French (French) appeals her 240-month sentence for

maintaining a place for the purpose of manufacturing, distributing and using

methamphetamine in violation of 21 U.S.C. § 856(a)(1).  The sentence appealed

was imposed after remand from the 240-month sentence initially imposed.  We

have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir.
R. 32.1.

I.

The underlying facts in this case are set forth in French's direct appeal. See United States v. French, 200 Fed. App'x 774 (10th Cir. 2006) (unpublished). French and co-defendants Jason Read, Brandon Jones, Jessica Gutierrez, Gregory Smith, and Ryan Cole were indicted for conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846. In a separate count, only French was charged with maintaining a place for the purpose of manufacturing, distributing and using methamphetamine in violation of 21 U.S.C. § 856(a)(1). French pleaded guilty to this charge, and the government dismissed the conspiracy charge against her pursuant to the terms of the plea agreement.

During French's initial sentencing in 2004, the district court determined French was responsible for 1,007 grams of methamphetamine and 71.2 grams of ephedrine or pseudoephedrine, and was thus subject to a base offense level of 32 pursuant to U.S.S.G. § 2D1.1(c)(4). The district court calculated an adjusted offense level of 37 and a criminal history category of III. The district court's calculations included: (1) a six-point enhancement under U.S.S.G. § 2D1.1(b)(8)(C) for creating a substantial risk of harm to a minor because an eleven-month old infant received second-degree burns during the manufacture of methamphetamine; (2) a two-point enhancement under U.S.S.G. § 3C1.1 for obstruction of justice because French threatened to burn down the house of Elsa Marlin if she told

authorities how the infant was burned; and (3) a three-point downward adjustment for acceptance of responsibility. Based on these determinations, the resulting guideline range was 262 to 327 months of imprisonment, which exceeded the statutory maximum of 240 months for French's offense of conviction. The district court sentenced French to 240 months of imprisonment.

French appealed her sentence, and we reversed and remanded for resentencing on two grounds: (1) the district court erred by relying on judicially found facts to mandatorily enhance her sentence, in violation of the Supreme Court's holding in United States v. Booker, 543 U.S. 220, 246 (2005) (making the guidelines advisory, rather than mandatory); and (2) the district court erred by including the weight of waste water in its calculation of the total weight of methamphetamine used for calculating the base offense level, contrary to U.S.S.G. § 2D1.1 cmt. n.1 (2003).

On remand, the district court again sentenced French to 240 months of imprisonment. When resentencing French, the district court determined that she was responsible for 1,320 grams of methamphetamine, and was subject to the same base offense level of 32 pursuant to U.S.S.G. § 2D1.1(c)(4). It again arrived at an adjusted offense level of 37 by imposing the same enhancements as it had previously for endangering a minor, and obstruction of justice, and also granting a downward adjustment for acceptance of responsibility. The guideline range, with a criminal history category of III, was again 262 to 327 months, which was above the

240 month statutory maximum.

On remand, French raised numerous objections to her revised presentence investigation report ("PSR"), including an objection to the PSR's new drug quantity calculation of 1,320 grams of methamphetamine. French also disputed the revised PSR's factual findings that supported the enhancements for endangering the life of a minor, and for obstructing justice. The district court conducted an evidentiary hearing on February 28 and March 2, 2007, where the government offered one witness and French offered nine witnesses. The court also considered the evidence previously presented at the 2004 sentencing, which included testimony from French and three government witnesses.

II.

French raises seven arguments on appeal. We first address French's argument that her resentencing was unfair because the district court was predisposed to reimpose its prior sentence. Next, we address the procedural reasonableness of French's sentence, including her arguments concerning the district court's reliance on the hearsay testimony of Agent Abowd and the credibility of co-defendant Gutierrez's testimony concerning drug quantities, as well as the sentencing enhancements for endangering a minor and obstructing justice. Finally, we address the substantive reasonableness of French's sentence.

A.    Predisposition

French argues that the district judge's decision to impose the same sentence

on remand indicates that the court prejudged the evidence and was predisposed to impose the same sentence. French did not raise this "predisposition" error before the district court. As a result, we may only review for plain error. United States v. Burbage, 365 F.3d 1174, 1180 (10th Cir. 2004). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Price, 265 F.3d 1097, 1107 (10th Cir. 2001).

When resentencing after a Booker remand, nothing precludes a sentencing court from imposing the same sentence, or even a greater sentence, than it did initially. See United States v. Medley, 476 F.3d 835, 840 (10th Cir. 2007) (affirming a longer term of imprisonment on resentencing after a Booker remand); United States v. Huber, 462 F.3d 945, 949 (8th Cir. 2006) ("[A] sentence is not invalid simply because the district court came to the same conclusions both pre- and post-Booker."). To arrive at a reasonable sentence after a Booker remand, a sentencing court must individualize the sentence by consulting the factors set forth in 18 U.S.C. § 3553(a) and adequately explaining the sentence imposed. United States v. Smart, 518 F.3d 800, 803 (10th Cir. 2008) (citing Gall v. United States, 128 S. Ct. 586, 597 (2007)).

French is correct that a district court violates its duty to engage in individualized sentencing when it reflexively imposes the same sentence on remand. Yet, in this case, there is no evidence that the district judge in this case

took this approach. To the contrary, the district court's actions during the resentencing process represent a near model example of post-<u>Booker</u> sentencing. The court held an evidentiary hearing to allow the government and French to resolve disputed factual questions regarding specific enhancements. At the hearing, the government presented one witness and French presented nine witnesses. During sentencing, the court addressed each of French's objections to the revised PSR and provided a basis for its ruling on each objection. After allowing French and her attorney to address the court, the court announced that it had considered the 18 U.S.C. § 3553(a) factors including "the nature and circumstance of the offense, as well as the personal characteristics of the defendant and her criminal history," ROA, Vol. XI, at 12, provided its final guideline calculation, recognized the advisory nature of the guidelines under <u>Booker</u>, identified the factual basis for the sentencing enhancements, and imposed a sentence. On this record, we cannot conclude that the court reimposed the same sentence without any individualized consideration of the relevant § 3553(a) factors. Further, French's resentencing is distinguishable from the sentencing in <u>United States v. Crowell</u>, 60 F.3d 199 (5th Cir. 1995), the only case cited by French in support of her predisposition argument. <u>See</u> <u>Crowell</u>, 60 F.3d at 201 (where, prior to sentencing, the district court expressed concern over the sentence allowable under the plea agreement, "which was too light a sentence, in the district court's opinion"). In the present case, we have no overt statement from the district court to indicate its predisposition regarding the

appropriate sentence.[1]

French argues the district court failed to decide each sentencing issue de novo. French points to the fact that the court in some instances overruled her objections to the revised PSR by summarily referring to the prior rulings it made when French was initially sentenced. See, e.g., ROA, Vol. XI, at 7 ("[T]he court previously found by a preponderance of the evidence that the [PSR] was accurate and a two-level increase was applicable. The court previously found by a preponderance of the evidence that [French] threatened to burn Elsa Marlin's house if she, Marlin, told the police the truth about how the child was burned on August 26, 2003. Therefore, the court overrules these objections.") Although the court clearly referred to its prior rulings on these fact issues, it was permitted to do so. See United States v. Moore, 83 F.3d 1231, 1234 (10th Cir. 1996) ("[D]e novo resentencing permits the receipt of any relevant evidence the court could have heard at the first sentencing hearing.") (quotation marks and emphasis omitted). That the district court reached the same conclusions after hearing more evidence does not indicate the court's initial rulings were erroneous.

Additionally, the district court did not restrict the evidence or argument that

---

[1] French argues that the district court's decision to reduce her attorney fees is overt evidence of predisposition. As the order reducing attorney fees is currently pending in a separate appeal, No. 07-5147, we express no opinion as to the propriety of that decision. However, even if the district court erred in reducing the attorney fees, under a plain error standard of review, that alone would be insufficient evidence of predisposition.

French could present at resentencing. In fact, French took ample advantage of this opportunity and presented nine witnesses. The court also acknowledged the receipt of new evidence, at one point noting that "[n]o new evidence has been presented to the court that would warrant a change to this previous finding." ROA, Vol. XI, at 4. The court's rulings reflect that it considered French's arguments and evidence in reaching its ultimate conclusions. French has not shown plain error.

B.     Procedural Sentencing Errors

French argues that the district court committed several procedural errors in the imposition of her sentence. "In reviewing the district court's application of the Sentencing Guidelines, this court reviews factual findings for clear error and legal determinations de novo." United States v. Redcap, 505 F.3d 1321, 1322 (10th Cir. 2007).

1.     Hearsay Evidence

French argues that the district court improperly considered hearsay evidence provided by Agent Abowd because the out-of-court statements to which he referred were made by drug dealers with numerous criminal convictions, and were thus unreliable. However, we have previously held that district courts may consider reliable hearsay testimony when sentencing. United States v. Bustamonte, 454 F.3d 1200, 1202 (10th Cir. 2006). French argues that the district court gave no reasoned explanation for admitting and considering Agent Abowd's hearsay testimony. However, the district court noted at sentencing that the statements corroborated one

another and were supported by the fact that French attempted "to cover up what really happened at her residences." ROA, Vol. XI, at 5. The district court's ruling that the hearsay statements were sufficiently reliable is supported by the record, and, thus, the district court properly considered these statements at sentencing.

2.      Witness Credibility and Drug Quantity Calculations

The base offense level for the unlawful manufacturing, importing, exporting, trafficking or possession of illegal narcotics is based on the quantity of drugs for which a defendant is responsible. U.S.S.G. § 2D1.1. When narcotics are not seized, the district court may estimate the drug quantity for sentencing, "so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." United States v. Verdin-Garcia, 516 F.3d 884, 896 (10th Cir. 2008) (citation and quotations omitted); see U.S.S.G. § 2D1.1 cmt. 12 ("Where there is no drug seizure . . . the court shall approximate the quantity of the controlled substance.").

The district court adopted the drug quantity findings in the revised PSR at resentencing. The revised PSR estimates

> . . . that Jason Read manufactured methamphetamine at the defendant's residence approximately one hundred times. Fifty percent of the time, these cooks would produce at least 28 grams of methamphetamine (1,400 grams). The remaining cooks produced at least five grams of methamphetamine (250 grams). The defendant knowingly and intentionally offered this residence for, and was aware that, Read was manufacturing methamphetamine at her residence eighty percent of the time or on eighty occasions, and therefore is responsible for 1,320 grams of a mixture and substance containing a

-9-

detectable amount of methamphetamine.

ROA, Vol. III, 2007 PSR, at 8 ¶ 18.[2]

In adopting the drug quantity suggested by the revised PSR, the district court based its finding on the 2004 sentencing testimony of co-defendant Jessica Gutierrez. ROA, Vol. XI, at 7. Gutierrez testified that Jason Read manufactured methamphetamine 100 times at French's residence, that on 50-75% of those occasions Read manufactured at least 28 to 30 grams of methamphetamine, and that the other times Read produced between 5 and 10 grams at a time. ROA, Vol. VI, at 53-54. Gutierrez indicated that French became angry with Read for manufacturing methamphetamine about 20 times, but did not object on other occasions. Id. at 96. She also indicated that French would purchase and provide pseudoephedrine to be used in producing methamphetamine. Id. at 55.

French objected to the revised PSR's calculation, arguing that Gutierrez was not a credible witness and that the district court failed to offer a reasoned explanation for crediting Gutierrez's testimony. In particular, French argues that Gutierrez was facing prison time and therefore had an incentive to lie to obtain a lesser sentence for herself. French also cites Gutierrez's drug use as a reason for not crediting her testimony.

---

[2] French argues for the first time in her reply brief that the district court should have used the estimate provided by Brandon Jones of six or seven cooks, rather than the one hundred cooks estimated by Jessica Gutierrez. Arguments raised for the first time in a reply brief on appeal are deemed waived. See Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).

While French's arguments regarding Gutierrez's credibility are noted, this court has made clear that "the district court's determination of a witness's credibility at a sentencing hearing is virtually unreviewable on appeal," and will only constitute grounds for reversal where testimony is "unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." United States v. Mendez-Zamora, 296 F.3d 1013, 1018 (10th Cir. 2002) (internal quotations and brackets omitted). Gutierrez's testimony relates to events she could have heard, and it appears credible on its face. We have no basis for concluding the district court erred in considering her testimony when determining drug quantity.

3.    Enhancement for Endangering a Minor

The district court applied a six-level enhancement to French's base offense level for committing an offense that "(i) involved the manufacture of . . . methamphetamine; and (ii) created a substantial risk of harm to the life of a minor[.]" U.S.S.G. § 2D1.1(b)(8)(C). The district court adopted the following facts from the revised PSR:

> On August 26, 2003, a child between the age of one and two years was burned in a flash fire related to methamphetamine manufacture at French's residence . . . . French, Read, and Gutierrez were outside of the residence when the child was burned. French had been boiling some used coffee filters in acetone in an attempt to recover a minuscule amount of methamphetamine which might be present in the filters. When the contents of the pan and the kitchen stove flared into

-11-

an open fire, Brandon Jones, Read's friend and co-conspirator, was standing nearby and tried to put the burning pan in the kitchen sink. Some of the burning liquid sloshed out of the pan and landed on the child. French argued against taking the child to the hospital because authorities would recognize the child's wounds as chemical burns.

ROA, Vol. III, 2007 PSR, at 7 ¶ 14; see ROA, Vol. XI, at 6 (finding this account of events to be "accurate").

French argues that the district court's factual finding that she did not want the child to be taken to the hospital was clearly erroneous.[3] We disagree. Gutierrez testified that French was concerned the authorities would recognize a chemical burn and conduct a follow-up investigation. ROA, Vol. VI, at 63. Elsa Marlin testified that French was concerned about being "busted" if the child was taken to the hospital. ROA, Vol. VI, at 107-08. This corroborating testimony provided an adequate factual basis to support the court's finding.

French again argues that the district court made clearly erroneous witness credibility determinations. She argues that Gutierrez and Marlin were not credible, while the testimony of her sister and a co-worker, neither of whom were at the residence on the day the child was burned, should have been given more

_____

[3] French actually argues that the enhancement for endangering a child should not apply to French if it did not apply to Brandon Jones, who was also present when the child was burned. See Aplt. Br. at 53 ("On this record, the court cannot adopt Jones' plea agreement and hold the burning of the child was unforeseeable to him but find the enhancement for injury to a minor child applied to [French]."). However, the district court based its decision to apply the enhancement on French's insistence that the baby not be taken to the hospital for treatment of the burns, and not on whether the manufacture of methamphetamine foreseeably could cause injury to a minor. ROA, Vol. XI, at 6.

-12-

consideration by the district court. The testimony of Gutierrez and Marlin is credible on its face, and we will not disturb the district court's credibility determinations. See Mendez-Zamora, 296 F.3d at 1018.

4.      Enhancement for Obstruction of Justice

The district court imposed a two-level enhancement against French because it found she

> (A) . . . willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense[.]

U.S.S.G. § 3C1.1. The district court found at French's initial sentencing that French threatened to burn down Elsa Marlin's house if she told the police the truth about how her child was burned. The district court reaffirmed this finding on remand. ROA, Vol. XI, at 8.

French contends that the district court erred in imposing this enhancement for two reasons. First, she claims that this court should use a beyond a reasonable doubt standard in imposing this enhancement. This argument is foreclosed by this court's decision in United States v. Magallanez, 408 F.3d 672, 683-85 (10th Cir. 2005), which made clear that post-Booker sentencing courts may make factual findings by a preponderance of the evidence, so long as they do not apply the guidelines in a mandatory fashion. Second, she argues that the district court was

-13-

unreasonable in applying the enhancement based on Marlin's testimony because she was not a credible witness. We disagree. The district court had the opportunity to hear Marlin's testimony and to assess her credibility. French has not shown her testimony to be unbelievable on its face. See Mendez-Zamora, 296 F.3d at 1018.

C.      Substantive Reasonableness of the Sentence

Finally, French appeals the substantive reasonableness of her sentence. French was sentenced within the guidelines,[4] so this court applies a deferential standard of presumptive reasonableness to the sentence on appeal. United States v. Angel-Guzman, 506 F.3d 1007, 1014 (10th Cir. 2007). French may rebut the presumption of reasonableness on appeal by showing that the sentence is unreasonable when viewed in light of the 18 U.S.C. § 3553(a) sentencing factors. Id.

As her primary argument, French cites 18 U.S.C. § 3553(a)(6) to argue that there is an unwarranted disparity between her sentence of 240 months of imprisonment and the sentences of her co-defendants Gutierrez, Jones, and Cole. We have said, however, that "[o]rdinarily, the disparity between co-defendants' sentences is not grounds for relief." United States v. Shaw, 471 F.3d 1136, 1140

_____

[4] French was sentenced to 240 months of imprisonment, the statutory maximum sentence for the crime of conviction. French's term of imprisonment is the guideline sentence, even though it is below the calculated guideline range of 262 to 327 months of imprisonment. See U.S.S.G. § 5G1.1 ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

-14-

(10th Cir. 2006) (citation omitted). "While similar offenders engaged in similar conduct should be sentenced equivalently, . . . disparate sentences are allowed where the disparity is explicable by the facts on the record." United States v. Goddard, 929 F.2d 546, 550 (10th Cir. 1991) (internal citation omitted).

French's calculated guideline range included enhancements for creating a substantial risk of harm to a minor, and for obstruction of justice. These enhancements were not found to apply to her co-defendants. Without those enhancements, her offense level would have been 29, and, with a criminal history category of III, her guideline range would have been 108-135 months of imprisonment. This hypothetical guideline range would have been comparable to the sentences of co-defendant Jones (125 months); Cole (130 months); and Gutierrez (79 months).

French raises two final points to support her argument that her 240-month sentence is substantively unreasonable. First, she contends that her sentence is far greater than it would have been if based solely on drug quantities she specifically admitted to using or distributing at her initial sentencing hearing. This argument is essentially a repetition of her claim that the district court's drug quantity calculation was erroneous, a claim which we again reject. To the extent French argues that our current sentencing system "does nothing to further the goals of the Sixth Amendment," Aplt. Br. at 57, the Supreme Court has repeatedly held otherwise. See, e.g., Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 863-

68 (2007) (summarizing cases).  Second, French claims the district court erred in failing to consider her unique individual characteristics as required under 18 U.S.C. § 3553(a)(1).  Specifically, she notes that she has been continuously employed for over thirty years, which she claims is unusual for a person convicted of a narcotics offense.  She also emphasizes that, since her incarceration, no disciplinary action has been taken against her.  While French's employment history and unblemished prison record are to her credit, these considerations fail to overcome the presumption of reasonableness which applies on appeal to sentences within the applicable guideline range.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge